(70 South. 421)

No. 20237.

CHOPIN v. FREEMAN, Tax Collector, et al.

(Dec. 13, 1915.)

*(Syllabus by the Court.)*

1. MOTIONS &#8860;36—HEARING—INJUNCTION.

A motion by plaintiff to strike out an exception to citations and service thereof, and a motion to dissolve the injunction, filed by the defendants, on the ground among others that the matters in dispute had been amicably settled by prior agreement between the parties, should be tried before the exception and motion are heard and decided.

[Ed. Note.—For other cases, see Motions, Cent. Dig. §§ 45, 46; Dec. Dig. &#8860;36.]

2. WITNESSES &#8860;255—EXAMINATION—RIGHT TO REFRESH MEMORY—BEST OR SECONDARY EVIDENCE.

The best evidence rule does not apply to letters referred to by a witness to refresh his memory as to the presence or absence of the plaintiff from the parish at the date of the filing of the suit.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 874–890; Dec. Dig. &#8860;255.]

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; W. T. Cunningham, Judge.

Action by Mrs. F. H. Chopin against J. W. Freeman, Tax Collector, and others. From judgment for defendants, plaintiff appeals. Reversed and remanded.

Breazeale & Breazeale, of Natchitoches, for appellant. John F. Stephens, Dist. Atty., of Coushatta, for appellees.

LAND, J. Plaintiff, a resident and taxpayer of ward 10 of the parish of Natchitoches, in November, 1910, instituted suit to annul a special election held in said ward on September 6, 1910, for the purpose of taking the sense of the qualified voters of said ward as to whether a special tax of five mills for five years should be levied in aid of the public schools in said ward, on the ground of alleged nullities in the proceedings, which may be briefly stated as follows:

(1) That the petition upon which the police jury acted in ordering the election was not signed by a sufficient number of qualified electors.

(2) That the petition asked for an election to vote a five-mill tax for a period of five years, whereas the enumeration called for six years.

(3) That the petition and ordinance were not published for 30 clear days before the election as required by law.

(4) That the petition and ordinance do not state the amount of the tax to be voted, and the period of time to run, etc.

(5) That said election was not legally pro-

mulgated, because the supervisors did not meet at the courthouse within five days after the election, as required by law; that only two of the three supervisors met, after the lapse of said five days, and attempted to promulgate the returns; that said supervisors failed and neglected to make public proclamation of the result of their compilation of the returns by publication or otherwise as required by law; that their written compilation of the result failed to account for the returns from precinct No. 3 of said ward 10.

(6) That the ballot boxes from three certain precincts of said ward had not been preserved, as required by law, but, on the contrary, said boxes had been opened and the papers therein destroyed before the lapse of six months from the date of the election; that, if said boxes had been kept as required by law, the result would have been to show that a majority in number and amount of the qualified voters of ward 10 so voting and entitled to vote, did not favor said tax and the same was defeated.

(7 and 8) That the police jury was without authority to order said election at a special meeting convened for other purposes, and had failed and neglected to pass necessary and proper ordinances levying said special tax of five mills, as required by law.

The compilation of the returns referred to showed a majority of $7,230 in amount, and a majority of 45 in votes, in favor of said special tax of 5 mills.

Plaintiff represented that an injunction was necessary to protect her property in said ward from sale to pay said illegal special taxes.

Plaintiff prayed for service and citation of the police jury, the school board, the parish superintendent of public schools, and the sheriff and ex officio tax collector, and for a writ of injunction restraining them from collecting from petitioner said special tax for 1910 and subsequent years; for judgment annulling said tax in so far as it may affect petitioner or her property in said ward; for judgment maintaining and perpetuating the writ of injunction sued out; and finally for other necessary orders and for general and equitable relief.

The petition was sworn to by the plaintiff in person, and the judge ordered that a writ of injunction issue as prayed upon the plaintiff giving bond in the sum of $1,000, conditioned as the law directs.

The sheriff, the president of the school board, the president of the police jury, and the superintendent of the public schools, accepted service of the petition and order, and waived service of citation and writ of injunction.

The injunction bond was signed in the name of the plaintiff by her attorneys of record and by one of them individually as surety.

On April 14, 1913, the sheriff and ex officio tax collector, and the parish superintendent of public education, appeared by counsel, and moved to dissolve the writ of injunction on the ground that the bond for injunction was not signed by the plaintiff or by any one authorized to represent her.

On the same day the school board and police jury of the parish appeared by the same attorney and excepted on the ground of want of legal citation and service on said bodies, according to law.

Plaintiff thereupon moved to strike out and dismiss the motion and exception, on the ground that the movers had no pecuniary or other real interest in the case; and the exception filed was not authorized by the school board by proper resolution of that body; and that the police jury was without interest or authority in the premises. Plaintiff in the alternative set up that when this suit was filed the school board, through its proper officers and members, admitted that the plaintiff's contentions were well founded,

and that the election complained of would be annulled, and that thereupon it was agreed that the case should not be tried during the life of the tax, and that after the expiration of such time judgment should be rendered in favor of the plaintiff as prayed for in her petition. Wherefore the plaintiff prayed that the motion and exception be stricken out, and in the alternative that the agreement with the school board be carried out, and for judgment accordingly.

The motion and exception were tried, and judgment was rendered in favor of the defendants, dissolving the injunction, and sustaining the exception to the citation.

[1] The judge below, over the objection of counsel, refused to hear and decide plaintiff's motion to strike out before hearing and deciding the defendants' exception and motion to dissolve. The two motions and exception might well have been tried together, but the action of the judge in first hearing and deciding the motion and exception filed by the defendant operated as a refusal to hear plaintiff's motion to strike out.

[2] On the trial of the motion to dissolve, Mr. Phanor Breazeale, as a witness, after making a relevant preliminary statement, which was objected to, and ruled out, for reasons not shown by the record, testified as follows:

"Anyhow, on the 26th day of November when the bond was signed, and the case filed, Mrs. Chopin was in Alexandria."

Counsel for defendant objected to this answer on the ground that parol evidence was not admissible to show agency or authority to sign the bond in question, and because the testimony as to whereabouts of the plaintiff at the time was hearsay. The court does not appear to have ruled on these objections. Mr. Breazeale, on cross-examination, testified as follows:

"Q. How do you know she was in Alexandria at the time?

"A. I know from a careful examination of memorandum and letters and copy of letters that would justify me in that knowledge."

Defendant objected for the reason that if the witness had those letters he should produce them. The objection was sustained for the reason that the letters were the best evidence. This rule does not apply to writings "collateral" to the issue, and miscellaneous writings, particularly letters, would be usually "collateral." Wigmore, vol. 2, 1177, p. 1389.

The witness had in substance stated in his direct examination that he had examined his letter files, and letters received and written, at the time of the filing of the suit, and from this data knew that when the bond was signed the plaintiff was in Alexandria.

The defendants did not call for the letters referred to by the witness, and, as they were collateral to the issue, the testimony of the witness was admissible, and was improperly ruled out.

It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that this cause be remanded to the court below, for further proceedings according to law, and that defendants pay the costs of this appeal.