209 So.2d 568 (1968)
FREESTATE INDUSTRIAL DEVELOPMENT COMPANY, Plaintiff-Appellant,
v.
T. & H., INC., and City of Shreveport, Defendants-Appellees.
No. 10969.
Court of Appeal of Louisiana, Second Circuit.
March 5, 1968.
Rehearings Denied April 2, 1968.
Writ Refused May 17, 1968.
*569 Cook, Clark, Egan, Yancey & King, Shreveport, for appellant.
Nelson & Evans, Shreveport, for T. & H., Inc.
John Gallagher, Shreveport, for City of Shreveport.
Before GLADNEY, BOLIN and PRICE, JJ.
PRICE, Judge.
Freestate Industrial Development Company filed this action against T. & H., Inc. and the City of Shreveport, seeking to enjoin the defendants from draining approximately 11 acres of the Highland Park Subdivision, Unit B, in the City of Shreveport, onto plaintiff's adjacent tract of land. In the alternative, plaintiff asked for monetary damages should the Court be unwilling to grant an injunction. A plea of prescription of one year under Articles 3536 and 3537 of the Civil Code relating to the alternative demand was sustained by the district court and this ruling was reversed by this Court (188 So.2d 746) upon the finding that the alternative demand was governed by the Civil Code articles dealing with servitudes. After the case was remanded the trial of the merits resulted in a judgment rejecting the demands of the plaintiff. From this judgment plaintiff has perfected a devolutive appeal to this Court.
The two tracts of land involved in this litigation were formerly a part of the old "Freestate Plantation" owned by the W. F. Taylor family. The plantation was situated north of the City of Shreveport on the west bank of Red River in Caddo and Bossier Parishes. This plantation was purchased in 1955 by N. O. Thomas, Jr.; Charles F. Hawn; W. A. Hawn, Jr. and J. Verne Hawn. These individuals, in the contemplated development of this property, formed two corporations: Freestate Development Company and T. & H., Inc. Ownership and control of Freestate Development Company subsequently changed to another group of individuals with Jack W. Clarke as President and Manager thereof. This corporation acquired the portion of Freestate Plantation which is bounded on the west by a former portion of the bed of Red River, which has been identified on maps and surveys as "Old River." This property was planned for development as an industrial park and portions have been utilized for this purpose. The portion of the tract to the west of this Old River bed was planned for residential development under the corporate name of T. & H., Inc., which remained under the ownership and control of the original purchasers of the old Freestate Plantation. Highland Park Subdivision, Units A and B were developed by the defendant, T. & H., Inc., in the area lying immediately adjacent and to the west of the plaintiff's property with a common boundary of approximately 2,057 feet. In the development of Highland Park Subdivision, Unit A, streets with underground drainage were installed with those underground conduits emptying into the Old River bed on the edge of plaintiff's property. Subsequently, Highland Park Subdivision, Unit B, was developed to the north of Unit A and again underground drainage facilities were installed with outlets designed to empty into this same Old River bed running along the boundary of plaintiff's property. The outlets serving the area involved in this suit are at the easterly end of Graystone Drive and Heatherwood Drive.
It is the plaintiff's contention that in the site grading of Unit B, a ridge running along the eastern edge of this unit was removed which changed the nautral drain of the water from westerly to easterly, thereby increasing the flow onto plaintiff's property. Plaintiff further contended that the defendant, T. & H., Inc., had committed a trespass upon its property by having removed a fence of plaintiff's on the *570 boundary between the two properties. An additional trespass is alleged to have been committed by T. & H., Inc. in extending a concrete conduit onto the property of plaintiff and by digging a ditch from the conduit down the bank of the old river bed.
In answer to plaintiff's petition, the defendants claim that a servitude of drain exists under LSA-C.C. Article 660 in favor of the property now included in Highland Park, Unit B, which permits the surface waters falling on this tract to flow easterly and to empty into the old river bed which defendants contend is a natural drainage channel. It is the defendants' position that although prior to the site grading the general slope of the terrain of most of the area in Unit B was to the west, a natural swale traversed this area which had a fall to the northeast. This swale, they contend, captured much of the water in the area which is now Unit B and carried it to the east into the bed of Old River.
Defendants further allege that the actual number of acres draining into the old river channel from Highland Park Subdivisions A and B has been reduced by the system of underground drainage installed in connection with the development of these two units.
For the proper determination of the issues in this case, we shall first consider whether the bed of Old River running along the west boundary of plaintiff's property is a natural drain.
Old River was created some years ago when Red River cut a new channel and abandoned this portion of its former bed. After its severance as a portion of Red River, the old river bed filled in to some degree with silt and alluvial soil and gradually changed its drainage flow from north to south to the opposite course of south to north. It extends from just north of Twelve Mile Bayou (south of old Freestate Plantation) through the tracts herein involved, continues past the downtown municipal airport and into Red River. Where it intersects the Caddo Parish levee northeast of the airport, a floodgate allows drainage water to flow into Red River.
We think the evidence in the record clearly establishes that the bed of Old River is a natural drain that has served a portion of the properties abutting it and inclusive of the areas comprising Highland Park Subdivision Units A and B.
In the development of Unit A of Highland Park Subdivision, several drainage outlets were installed by T. & H., Inc. to effect drainage into the bed of Old River without any objection on the part of plaintiff. We think these actions on the part of plaintiff indicate that it considers the bed of Old River to be a natural drain. Plaintiff's witness, J. C. McLemore, a licensed surveyor who performed work for both T. & H., Inc. and plaintiff involving the properties under consideration herein, testified that his firm made certain preliminary studies for T. & H., Inc. for development of Highland Park Units A and B. He admitted that the drainage was designed in both of these units to flow into the bed of Old River. It must be assumed that he considered the bed of Old River to be a natural drainage channel.
Mr. McLemore, who had been familiar with the property for a period of time prior to its subdivision, acknowledged the existence of the swale but testified he did not believe it had actually been draining this area for some time.
Mr. B. M. Ferguson, a Civil Engineer, who testified for defendants, was of the opinion that this swale could have caused the drainage of a vast area of Unit B to flow to the east into Old River. His opinion was based on an examination of the topographic map made by George E. Dutton in 1948.
We think the testimony of Mr. Ferguson and the information reflected by the Dutton map substantiate that this swale did drain waters from this area into the bed of Old River.
*571 We, therefore, find that area of plaintiff's land along its western boundary known as Old River owed a servitude of natural drainage to the lands of defendant, T. & H., Inc., situated in Unit B of Highland Park Subdivision.
Plaintiff contends that should the Court find that a servitude of drain exists, defendant has no right to change or alter its land in any way to make the servitude more burdensome. It also contends since the installation of subdivision facilities in Unit B, more water is being discharged on plaintiff's land than prior thereto.
In the case of State ex rel. Wood v. Pinder, 41 So.2d 479 (La.App., 1st Cir., 1949), the question of the owner's right to alter or change the method of exercise of a drainage servitude was considered. The Court in that case held that LSA-C.C. Article 660 is to be literally construed in favor of the estate to which the servitude is due and that an owner whose waters flow by natural drains onto lands of his neighbor may cut ditches to concentrate and speed the flow of water beyond the slow natural process by which they would ultimately reach their destination.
Of course, this rule is qualified to the extent that the alteration or change in method must not cause any greater quantity to flow than before.
We are of the opinion that the defendant, T. & H., Inc., had the right to change the method whereby the drainage waters were gathered and delivered onto the servient estate so long as no increase therein was caused.
Plaintiff relied on the testimony of J. C. McLemore who testified that he found that by the removal of the high ridge and change of surface drainage flow in that portion of Unit B involved, an additional 11 acres now drain into the Old River bed on plaintiff's property. In opposition to this the defendant produced as a witness, B. M. Ferguson, who had made a thorough study of the drainage pattern and changes therein of all lands draining through the channel called Old River. His source of information for conditions existing prior to subdivision of the land was the aforementioned topographic map of the area made by George E. Dutton. This analysis was very complete, and his testimony reflects that less acres of Highland Park Unit B now drain into the channel on plaintiff's land than prior to the development of this subdivision.
There has been no evidence showing that any overflowing or flooding has occurred on plaintiff's land since the completion of the subdivision in 1964. We do not find that the defendant, T. & H., Inc., has caused any greater amount of water to flow onto plaintiff's property as a result of its actions in subdividing Unit B of Highland Park Subdivision.
We find that plaintiff has produced evidence to substantiate his contention that defendant, T. & H., Inc., has committed a trespass on his property by the cutting of a fence.
Defendant, T. & H., Inc., has further illegally constructed a concrete conduit which extends over the property line onto plaintiff's property and has dug a ditch from this conduit down the slope of the west bank of the Old River bed.
The case of Landry v. McCall, 3 La. Ann. 134 (Orleans, 1848), has held that the owner of a servitude of drain may not go upon the servient estate and do any acts without the consent of the owner. Under the holding of this case and the jurisprudence which follows same, the above acts of defendants constitute an illegal trespass on plaintiff's property.
Plaintiff has requested an injunction ordering the removal or correction of these conditions. The evidence reflects that the fence has been repaired, and since there can be very little detriment to this property by allowing the few feet of conduit to remain, as well as the ditch, we *572 feel an alternative award of nominal damage would be appropriate.
It is the order of this Court that the judgment of the district court is amended to provide that plaintiff be awarded damages in the amount of $250.00 against the defendant, T. & H., Inc., and that as amended the judgment be affirmed. All costs of this Court are to be paid by appellee, and all other costs are to be paid by appellant.